**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CHARLIE BANKS,** | |
| **PLAINTIFF,** | **Civil Case No.: 18-cv-01190** |
| **v.** | **Hon. Sharon Johnson Coleman** |
| **CREDIT CONTROL, LLC,** | **Magistrate: Hon. Daniel G. Martin** |
| **DEFENDANT.** | |

**DEFENDANT CREDIT CONTROL, LLC'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

Defendant, Credit Control, LLC ("Credit Control") respectfully submits this memorandum of law in support of its motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), requesting this court dismiss Plaintiff's Complaint ("Complaint") dated February 15, 2018 (D.E. #1) with prejudice.

**PRELIMINARY STATEMENT**

Plaintiff, Charlie Banks ("Plaintiff" or "Banks") alleges in his complaint that a collection letter, dated January 8, 2018 (the "Letter"), violated the Fair Debt Collections Practices Act ("FDCPA").

The Letter states in relevant part:

> **Because of interest, late charges, and other charges assessed by your creditor that may vary from day to day, the amount due on the day you pay may be greater. Thus, if you pay the total amount due shown above, an adjustment may be necessary after we receive your check, in which event, we will inform you.**

PL Complaint ¶ 19 and PL's Ex. A.

1

Specifically, Plaintiff alleges DSNB was not authorized to assess "other charges". PL Complaint ¶ 20. Plaintiff alleges Credit Control's Letter was false and misleading and therefore it violated 15 U.S.C. § 1692e by the statement "other charges". Plaintiff's claims fail for two reasons: First, the credit agreement attached to Plaintiff's Complaint as Exhibit B sets forth multiple "other charges" that could be charged, and accordingly the statement that other charges could occur is true. Second, even if it is assumed that the statement regarding "other charges" is technically false, the inclusion of the words "other charges" is immaterial "catch all" language suggested by the 7th Circuit, and therefore the language does not violate the FDCPA.

I.      **BACKGROUND**

        **A. Statement of Facts**

Plaintiff incurred a credit card debt (the "Debt") for a Macy's credit card issued by Department Stores National Bank ("DSNB"). Complaint ¶ 16 and PL's Ex. A. On or about February 27, 2014, Plaintiff applied for the Macy's credit card, entering into an agreement with DSNB. Complaint ¶ 21 and PL's Ex. B. Among other things, Exhibit B attached to Plaintiff's Complaint states:

> **Interest Charges.** We impose interest charges when we apply APRs to your account balances. We do this every day by using a daily periodic rate. To get a daily periodic rate, we divide the APR by 365.
>
> **Late Fee.** We may add a late fee for each billing cycle in which you have a past due payment. For late fee purposes, you have a past due payment any time you fail to pay the Minimum Payment Due by the payment due date. The fee will be $27; or $38 for any additional past due payment during the next six billing cycles after a past due payment. However, the fee will not exceed the amount permitted by law. We add this fee to the regular purchase balance.

2

**Returned Payment Fee.** We may add a returned payment fee for a returned payment. A returned payment is an electronic debit, payment check, or similar payment instrument, that is returned unpaid. We may add this fee the first time your payment is returned, even if it is not returned upon resubmission. The fee will be $27; or $38 for any additional returned payment during the next six billing cycles after a returned payment. However, the fee will not exceed the amount permitted by law. We add this fee to the regular purchase balance.

DE #15 PL's Ex. B. A true and accurate copy of Plaintiff's Exhibit B is also attached hereto as Exhibit 1 ("Credit Agreement").

The Credit Agreement further provides that:

**Collection Costs.** To the extent permitted by law, you are liable to us for our legal costs if we refer collection of your account to a lawyer who is not our salaried employee. These costs may include reasonable attorneys' fees. They may also include costs and expenses of any legal action. DE #15 PL's Ex. B.

Plaintiff acknowledges in the Complaint that interest and late charges and returned check fees can be charged. Accordingly, the issue before the court is whether or not "other charges" can be charged. (Doc. 1 ¶ 22). Credit Control contends that collection costs, returned payment fees, potential future attorneys' fees, court costs are "other charges".

## B. Procedural History

On February 15, 2018, Plaintiff filed a complaint for alleged violations of the FDCPA. D.E. #1. Plaintiff alleges a collection letter sent by Credit Control, dated January 8, 2018, violated the Fair Debt Collections Practices Act ("FDCPA"). Specifically, the Plaintiff contends Credit Control violated 15 U.S.C. § 1692e. On March 26, 2018, Credit Control filed its answer. D.E. # 6. Credit Control now makes this motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, in accordance with the status hearing before this Court on June 19, 2018. D.E. # 16.

3

## II.    LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(c) Standard

Under Rule 12(c), "a party can move for judgment on the pleadings after the filing of the complaint and answer." *Supreme Laundry Serv., LLC v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008). A motion for judgment on the pleadings should be granted "only when it appears beyond a doubt that the plaintiff cannot prove any set of facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." Id. In deciding the motion, the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

### B.  FDCPA Standard

Claims brought under the Fair Debt Collection Practices Act are evaluated under the objective "unsophisticated consumer" standard. *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 273 (7th Cir. 2014). The Seventh Circuit Court of Appeals has found that "[a]n unsophisticated consumer is not a 'completely ignorant' consumer. Rather, he 'possesses rudimentary knowledge about the financial world . . . [as well as] reasonable intelligence.' " *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Further, "if it is apparent from a reading of a [collection] letter that not even a significant fraction of the population would be misled by it – if… the interpretation attested to by the plaintiff is a 'fantastic conjecture' – the court should reject it without requiring evidence beyond the letter itself." *Taylor v. Cavalry Inv. LLC*, 365 F.3d 572, 574-75 (7th Cir. 2004) (citation omitted); *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000) (noting that any document can be misread and the FDCPA is not violated by a dunning letter that is susceptible to "an ingenious

4

misreading"); see also *Velazquez v. Fair Collections & Outsourcing, Inc.*, No. 12 C 04209; 2013 WL 4659564 (N.D. Ill. Aug. 30, 2013) (dismissing claim on motion to dismiss where the letter was clear on its face). The unsophisticated consumer standard is an objective one, and courts must disregard "unrealistic, peculiar, bizarre, and idiosyncratic interpretations" of collection letters. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir.2005)

The Seventh Circuit also requires that an alleged violation of § 1692e be material and as such "have [a] practical impact on a consumer's rights or decision-making process—that is, . . . represent the kind of conduct the [FDCPA] was intended to eliminate*." Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016). Thus, the Court must determine not only whether the statement is false or misleading, but also whether the statement is material. *Hahn v. Triumph P'ships* LLC, 557 F.3d 755, 758 (7th Cir. 2009).

## III.    ARGUMENT

### A.  DSNB Has the Contractual Right to Assess Interest, Late charges, and Other Charges and Accordingly the Disputed Language is True

The only question before the Court is whether or not DSNB has the right, contractually or otherwise, to assess "other charges" beyond interest and late charges. Based upon the Credit Agreement attached to Plaintiff's Complaint, there is no question that the creditor DSNB had the contractual right to charge several "other charges" as set forth in the Credit Agreement and outlined above. First, if Plaintiff would have attempted to pay any amount which was a returned payment, the Credit Agreement expressly allows DSNB to charge a returned payment fee which would have caused the balance on the account to change after receipt of the Letter from Credit Control. Further, there is no doubt that DSNB had the right commence legal action at any time, as the account was in default, and per the Credit Agreement, charge legal fees and all recoverable

costs associated with the collection action to Plaintiff, including filing fees. The Letter does not provide a time limitation on when the "other charges" would or could be incurred. Accordingly no imminent collection action would be necessary to still make the disclosure true regarding legal fees and collection costs. Illinois statute specifically allows for the creditor in this case to charge "other charges".

> "(c) The revolving credit arrangement may provide for the payment by the debtor and receipt by the lender of all costs and disbursements, including reasonable attorney's fees, incurred by the lender in legal proceedings to collect or enforce the debt in the event of delinquency by the debtor or in the event of a breach of any obligation of the debtor under the arrangement."

815 ILCS 205/4.2 (c).

The 7th Circuit has expressly suggested the use of the safe harbor language complained of in the Letter here. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). In *Miller*, the Seventh Circuit provided the following safe harbor language for circumstances whereby interest, late fees/charges, and other fees/charges could accrue or be assessed on a non-static balance.

> As of the date of this letter, you owe $[a stated amount]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check. For further information, write to the above address or call [phone number].

Such safe harbor language has also been adopted in other circuits. See *Avila v. Riexinger & Associates*, LLC, 817 F.3d 72, 77 (2d Cir. 2016).

Plaintiff will rely on *Boucher v. Fin. Sys. of Green Bay*, 2018 U.S. App. LEXIS 1094 (7th Cir. 2018) (7th Cir. 2018), where the 7th Circuit clarified its position regarding the safe harbor language and ruled "debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the Miller safe harbor language without regard for whether that

language is accurate under the circumstances". Credit Control agrees, but the facts in *Boucher* are completely distinguishable from the facts in the instant matter. In *Boucher*, the underlying debt was a medical debt and the consumer was a Wisconsin resident and there was no dispute by the parties that "late charges" or "other charges" could not be assessed pursuant to Wisconsin statute because of the medical nature of the debts. Therefore, "the dunning letter falsely implied a possible outcome—the imposition of "late charges and other charges"—that cannot legally come to pass." *Id*. The Court in *Boucher* stated:

> Here . . . the challenged statement is misleading to an unsophisticated consumer. The dunning letter states that, "[b]ecause of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater." While creditors of medical debts may charge interest, FSGB admits that it cannot impose "late charges and other charges" under Wisconsin law. Therefore, the dunning letter falsely implies a possible outcome—the imposition of "late charges and other charges"—that cannot legally come to pass. . . . This statement is misleading to an unsophisticated consumer because "[t]his is not the type of legal knowledge we can presume the general public has at its disposal."

*Boucher v. Fin. Sys. of Green Bay*, 2018 U.S. App. LEXIS 1094 (7th Cir. 2018) (7th Cir. 2018)

Unlike in *Boucher*, in the instant matter, the underlying debt is a credit card debt for a resident of the State of Illinois, whereby interest, late fees/charges, and other fees/charges may be assessed by DSNB under both the credit agreement attached to the Complaint and under Illinois law and therefore "other charges" could "legally come to pass". It is one thing if the safe harbor is materially false and the charging of fees and other charges is impossible under the law, as in *Boucher*, where fees and other charges were prohibited by state law, but what Plaintiff is asking the Court to decide here is something completely different. The purpose of a safe harbor language espoused in *Miller* was to advise consumers of interest, fee and other charges that could "come to pass". Here, such "other charges" could come to pass.

7

Had Plaintiff failed to include the safer harbor language suggested by the Court in *Miller*, Defendant would simply be defending the same cause of action under the theory that interest, late charges and other charges could cause the balance to very following the Letter, because the Credit Agreement expressly allows for other charges.

Note that Credit Control specifically utilizes the language "may". (. . . "**the amount due on the day you pay <u>may</u> be greater . . . an adjustment <u>may</u> be necessary after we receive your check).** In its recent opinion in *Dunbar v. Kohn Law Firm, S.C. et al.* 17-2134 (7th Cir. 2018), the Seventh Circuit confirmed that the use of the word "may" does not mean "will" or "is". Accordingly, it makes no difference whether the original creditor was charging late fees or other charges at the time of the letter, only that it had the legal right to charge such fees prior to payment occurring. The Court in *Dunbar* found that language stating "Notice: the settlement **<u>may</u>** have tax consequences" was not misrepresentation in violation of §1692e where the particular consumer was insolvent and accordingly would not have had to pay taxes on the settled debt if it was paid. *Id.* at 3. The Court in *Dunbar* emphasized that the "unsophisticated consumer would not understand the word "may" to mean "will". *Id* at 5. "The use of the word "may" signals only that tax consequences are **<u>possible</u>** in the case of some debtors, not that tax consequences are possible or likely (much less certain) in this particular debtor's circumstances.". *Id.* at 6.

In reaching its decision, the Court in *Dunbar* stated:

"Our decision in *Taylor v. Cavalry Investment, L.L.C.*, 365 F.3d 572 (7th Cir. 2004), is instructive on this point. The collection letter there stated: "[I]f applicable, your account may have or will accrue interest at a rate specified in your contractual agreement with the original creditor." Id. at 574. For one of the plaintiffs, the account continued to accrue interest, but for the other two, the accounts were closed and the creditors stopped adding interest. Id. The plaintiffs argued that the statement was false in violation of the FDCPA because two of the creditors were no longer adding interest. Id. at 575. We called that argument

"downright frivolous" because "[t]he letter didn't say they would [add interest], only that they might." *Id."*

The language of the letter here falls directly into the rationales of the *Dunbar* and *Taylor* because it was legally possible for the original creditor to charge this Plaintiff late charges and other charges pursuant to Illinois law and the credit agreement attached as an exhibit to Plaintiff's Complaint (Doc. 15).

**IV.    CONCLUSION**

For the reasons set forth above, Credit Control, LLC's motion for judgment on the pleadings should be granted and Plaintiff's Complaint should be dismissed in its entirety.

Dated: August 20, 2018                                    Respectfully Submitted,

                                                          **WATTS LAW GROUP, LLC**

                                                          *Attorneys for Defendant*
                                                          Credit Control, LLC

                                                          By:/s/ *Patrick A. Watts, Esq.*
                                                          Patrick A. Watts, Esq.
                                                          212 S. Bemiston Avenue, Suite 200
                                                          St. Louis, Missouri 63105
                                                          pwatts@swattslaw.com
                                                          (314) 669-5490

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on this date via

ECF and electronic mail on the following:

John P. Carlin #6277222
Suburban Legal Group, PC
1305 Remington Rd., Ste. C
Schaumburg, IL 60173
jcarlin@suburbanlegalgroup.com
*Attorney for Plaintiff*

Dated: August 20, 2018

**WATTS LAW GROUP, LLC**

*Attorneys for Defendant*
Credit Control, LLC

By:/s/ *Patrick A. Watts, Esq.*
Patrick A. Watts, Esq.
212 S. Bemiston Avenue, Suite 200
St. Louis, Missouri 63105
pwatts@swattslaw.com
(314) 669-5490